UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division
CASE NO. 20-22720

LETICIA GIL,

    Plaintiff

v.

KEVIN W. WHITEHEAD, P.A. and
KEVIN W. WHITEHEAD, individually,

    Defendants.

_____/

## COMPLAINT

Plaintiff, LETICIA GIL, sues Defendants, KEVIN W. WHITEHEAD, P.A. and KEVIN W. WHITEHEAD, individually and states:

## JURISDICTION AND VENUE

1. This action is founded on Defendants' violations of the Fair Labor Standards Act, 29 U.S.C. § 201 et. seq ("FLSA"), the Florida Minimum Wage Act, §448.110, Fla. Stat. ("FMWA"), the Emergency Family Medical Leave Expansion Act provision of the Families First Coronavirus Response Act ("FFCRA") and the Family Medical Leave Act ("FMLA"), §448.102, Fla. Stat., the Florida Whistleblowers Act ("FWA"), and a claim for unpaid wages under § 448.08, Fla. Stat.

2. Jurisdiction over the federal claims arises under 29 U.S.C. § 216(b), 28 U.S.C. §1331 and 29 U.S.C. § 2617.  Supplemental jurisdiction of Plaintiff's FMWA, FWA and unpaid wages claims is founded on 28 U.S.C. § 1367.

3.  Venue is proper in the Miami Division of the Southern District of Florida pursuant to 28 U.S.C. Section 1391(b) inasmuch the acts which form the basis of the claims all arose within the Southern District of the State of Florida.

4.  All jurisdictional prerequisites to bringing these claims have been met or waived. Plaintiff attaches as Composite Exhibit A the copy of its demand letter to Defendants and Defendants' response as proof of compliance with the pre-suit requirements of § 448.110, Fla. Stat. and Plaintiff's entitlement to claim liquidated damages under the FLSA at the higher minimum wage rate set by the State of Florida.

## PARTIES

5.  Plaintiff, LETICIA GIL, is a resident of Dade County, Florida, is *sui juris*, and is a former employee of Defendants.

6.  Defendant, KEVIN W. WHITEHEAD, P.A. is a Florida professional corporation d/b/a "Whitehead Law Group" ("WLG") which operates a law firm whose primary practice focus is bringing Personal Injury Protection ("PIP") claims against insurance companies. The principal office for WLG is in Miami-Dade County, Florida.

7.  Defendant KEVIN W. WHITEHEAD ("WHITEHEAD") is the President and sole shareholder of WLG. At all times relevant to the causes of action asserted in this Complaint, WHITEHEAD was responsible for the day-to-day management of WLG including but not limited to all decisions related to hiring and firing of employees, determining the payment of wages, job assignments and scheduling of work hours. WHITEHEAD is a resident of Miami –Dade Florida.

8. WLG constitutes an enterprise engaged in commerce under the FLSA and FMWA because its employees worked on or handled equipment, goods or materials that moved through interstate commerce; it ordered goods from out of state, and/or it transmitted or received funds and insurance proceeds from out of state entities. At all times relevant to this action, WLG employed two or more but less than 500 employees and on information and belief, generated at least $500,000 or more in annual gross volume of sales.

## FACTS

9. Plaintiff is a single mother with a young school-aged son.  Plaintiff worked for Defendants as a full-time legal assistant for approximately seven years.  Plaintiff reported directly to WHITEHEAD even though WHITEHEAD rarely worked in his law firm office during the period at issue in this case.

10. Prior to June 4, 2020, Plaintiff was considered a valued member of WLG's staff. Because of Defendants' regard for her quality of work and work performance, Plaintiff received a substantial raise in August, 2019.  Her wages were boosted to $2,247.75 (gross) and her vacation pay was increased to 14 days per year and one week of sick leave.  This wage rates remained in effect until the time of her termination on June 15, 2020.

11. In or around mid-March, 2020 as the COVID 19 pandemic rapidly continued to spread throughout the nation, federal, state and local governments such as Miami-Dade County issued "stay at home" orders that resulted in the closure of businesses, schools and daycare centers.  As a result, Plaintiff and other staff members at WLG closed WLG's office and teleworked from home.

12. The FFCRA passed Congress, was signed into law and went into effect on 4/1/20 thus providing employees like Plaintiff up to 10 weeks of paid leave if they could not work in an office or telework due to the closure of a child's school or daycare center due to COVID 19.

13. When Defendants first became aware that Plaintiff was not reporting to his office in and around 4/3/20, he sent her an electronic communication demanding an explanation of why she was working from home.  Plaintiff responded, " I am working from home because there is a state "stay at home" order and [son's] school is closed until further notice.  I have no one to watch my son until something changes."  She requested clarification, "Moving forward, should I continue to work remotely from home or should I put my responsibilities on hold until you decide whether or not I will be compensated for my work ?...."   Defendants never responded to the communication and Plaintiff took this to mean that she should continue to telework from home.

14. On or about April 30, 2020,  Defendants demanded that Plaintiff return to the office to work.  Plaintiff responded, "I will not be able to return to the office full-time until [son's] school re-opens in this summer.  They advised all parents that they will be re-opening  in the summer in June." Defendants replied, "You need to work in the office."  On or about May 3, 2020,  Defendants issued a  text message advising that all staff must return to work in the office even though WHITEHEAD, himself, was not reporting to the office.

15. Although Defendants were on notice of Plaintiff's inability to work in the office due to the closure of her son's school, they failed to advise Plaintiff of her rights under

FFCRA and the Emergency Family Medical Leave to take paid leave on account of those circumstances.

16. Nevertheless, Plaintiff continued to perform telework from home with the expectation she would be paid for that work. Defendants continued to accept the benefit of her telework.

17. Plaintiff worked 75 hours during the two-week pay period ending 6/1/20. Her paycheck for that pay period was due to be direct deposited into her bank account on 6/5/20.

18. On 6/4/20, Defendants sent Plaintiff a text message claiming that she owed $5,479.60 to WLG for unpaid insurance premiums dating back to 2016. Defendants also stated, "We have the further issue with you refusing to work in the office which is against company policy and **_threatens your ability to get paid for that hours that you were working at home_**...."  [E.S.]. Defendants then sent an email to Plaintiff stating,

> "Leticia, you may see a direct deposit in your account tomorrow for $1620.33"  Do NOT withdraw this money since **_we have cancelled same_** and have taken you off payroll until the health insurance [issue has been resolved]. I sent you the payroll for the last 5 years in which you see the exact amount you paid towards your obligation....." [E.S.]

19. Plaintiff's reply to Defendants denied that she owed $5,479.60 in unpaid insurance premiums or that she had refused to come to work.  She _reiterated that she could not report to the office because her son's school was closed due to COVID 19  but that she anticipated the school might re-open soon_.  Defendants again failed to advise Plaintiff of her right to take paid Emergency Family Medical Leave if she

could not telework or report to work.  Plaintiff's request for an explanation of why she had been taken off payroll went unanswered.

20. Defendants responded that Plaintiff would not get paid *her earned wages* until she paid off her insurance obligation and "when it is determined the amount you owe, you will be paid what you are owed for working minus any amounts you owe WLG." Defendants further threatened, "In regard to working from home, you are violating my direct instruction and are doing so at your own peril risking not only your termination but *also non-payment of your hours*.  *Unless you provide me with a federal law or mandate that requires me to employee you from home at this point, then I do not have to pay you for working from home since you are doing so voluntarily out of the goodness of your heart I assume.*"  [E.S].  Defendants copied another staff member on this communication who cautioned them that docking wages in this manner was against the law.

21. Plaintiff replied, "**Under the Fair Labor Standards Act, there is a provision that states you have to pay the employee on the pay date**."  Yet Defendants ignored her reference to the FLSA and continued to withhold her earned wages.

22. On 6/8/20, Plaintiff texted Defendants stating, "I still have not gotten paid for the last payroll on June 5$^{th.}$"  Plaintiff inquired when she would receive her paycheck.  Defendants' response re-iterated their position that they considered Plaintiff an indentured servant and she needed to pay her entire insurance premium obligation before she would receive any wages. Plaintiff replied, "... **you can't just withhold my entire paycheck**...." [E.S.] and asked if Defendants still wanted her to continue working.  Defendants replied, "Yes, we want you."

23. Later that day, Defendants sent an electronic communication to Plaintiff questioning if she was working. Plaintiff responded, "Please provide me the amount you claim I owe you and how you calculated that amount. ***Otherwise, my paycheck is owed to me as I earned it.*** [E.S.] I have a three-year old that I need to support and I need my paycheck." Plaintiff never received a response or her paycheck.

24. The following day, 6/9/20, Plaintiff texted Defendants again,

    "... please answer my question about when I am going to receive my ***overdue paycheck***. ***It has now been 5 days since it was due. Do you expect me to keep working for you and not get paid ?*** [E.S.] I don't understand what is going on here. How can you claim I owe you money and then not tell me exactly how much and withhold my paycheck ? Then you terminate me from payroll and now you put me back on it ? It seems like you are trying to force me to resign. I don't want to resign ***but I do want to get paid***. [E.S.]"

25. Indeed, as a consequence of Plaintiff's lawful objections to not being paid under the FLSA and the FMWA and to being forced to work in the office while her son's school was closed, Defendants began to plan means to terminate her or force her to quit. They scrutinized Plaintiff's work for the period she had been teleworking and accused her of not "billing' her time properly although Plaintiff's time performing secretarial work was neither billable as legal or paralegal fees in PIP cases. Defendants then demanded that she recreate her "billing hours" for this period and refused to pay her for the work time she would spend completing this task.

26. By 6/10/20, Defendants still had not determined the exact amount they claimed Plaintiff owed for unpaid insurance premiums but nevertheless continued to

withhold her entire wages for the preceding pay period. Defendants also expected Plaintiff to continue performing work for them without the prospect of even getting paid the federal or Florida mandated minimum wage.

27. Plaintiff could not pay her bills as they came due, incurred late fees and suffered great emotional distress not knowing if and when she would get paid and what would happen to her employment. On 6/12/20, Plaintiff wrote Defendants, "You should have had your calculations in order before you withheld my wages on June 5th. .....I would have happily entered into an agreement with you..... ***Instead you withheld my wages without proper notice and violating the law under the FLSA***. [E.S.]. Moving forward, when should I expect my paycheck ?" Defendants responded, " ***If you owe WLG more than your paycheck then probably never, unless you can provide me with the specific statute and/or law that requires an employer to pay an employee who owes the employer money***" [E.S.] entirely ignoring the very law Plaintiff had just cited to them that mandated they pay her at least minimum wage.

28. Defendants continued to discriminate against Plaintiff for asserting her rights by claiming she had not clocked in and out properly and initiating a new "project" to examine whether she had been paid for work hours they claimed she never performed in prior pay periods despite that other staff members had reported their work hours in a similar fashion. Defendants threatened that after they completed this "project" Plaintiff would owe WLG even more money. Defendants continued to insist that Plaintiff report to the office to work and never informed her that she

had a right to take paid leave under the FFCRA and the Emergency Family Medical Leave Expansion Act to care for her son.

29. Defendants continued to demand that Plaintiff work without getting paid and she continued to object to performing work without the prospect of being paid a cent when she did not even know how much Defendants claimed she owed.

30. On 6/15/20, Defendants terminated Plaintiff "retroactively" for among other baseless and retaliatory reasons, her "sub-standard effort, attendance, and attitude in general," and because of her failure to work in the office "due to the fact that your child was not in school" which Defendants contended was an "excuse" that "was not legally correct or even reasonable..."

31. Although Plaintiff was not the only staff member who failed to return to the office on 5/4/20, on information and belief, she was the only staff member who suffered adverse consequences failing to comply with Defendants' 5/4/20 directive.

32. At the time that Plaintiff was fired, she was owed at least one week of accrued but unpaid vacation pay.

33. Defendants' unlawful conduct has caused Plaintiff to suffer and continue to suffer emotional distress, including humiliation, anxiety and loss of enjoyment of life, as well as lost wages and benefits.

34. As a consequence of Defendants' unlawful conduct, Plaintiff was required to hire the undersigned law firm to enforce her rights and agreed to pay the law firm a reasonable fee and costs for its services.

35. On 6/26/20 in response to Plaintiff's attorney's demand letter, Defendants paid Plaintiff the two weeks' pay that was owed on 6/5/20, but failed to pay liquidated

damages under the FLSA and/or the FMWA that accrued due to late payment, her accrued but unused vacation pay, or her attorney's fees.

36. Plaintiff has filed this lawsuit to enforce her rights under federal and state law.

## COUNT I – FAIR LABOR STANDARDS ACT
### [Both Defendants]

37. Plaintiff incorporates by reference and re-alleges paragraphs 1-27 and 33-36 as if fully set forth herein and further alleges:

38. Plaintiff earned $2,247.75 in gross wages during the two week pay period ending on 6/1/20.  Her wages were due to be paid on 6/5/20.

39. Defendants refused to pay Plaintiff any of her wages at the time they were due under the FLSA and the FMWA.

40. Plaintiff made repeated demands to Defendants that they pay her wages but Defendants failed and refused to do so*, even after being informed by Plaintiff that the FLSA required timely payment of wages, and that they could not withhold her entire pay for the pay period*. Defendants finally paid Plaintiff on 6/26/20,  twenty-one days late.

41. Defendants willfully and knowingly disregarded their obligations under the FLSA to timely pay Plaintiff her wages and to pay her at least minimum wage (at the Florida rate then in effect).

42. By reason of such intentional and willful conduct, Plaintiff suffered damages and was forced to hire the undersigned law firm to obtain legal advice and assistance. Plaintiff's lawyers incurred time pre-suit to discuss the matter with Plaintiff and

review documents and correspondence which then were used to draft the demand letter attached as Exhibit "A".

43. Defendants' tender of wages on 6/26/20 neither included a sum attributable to liquidated damages for their refusal to timely pay Plaintiff at least her minimum wage (at the Florida Minimum Wage rate) for the pay period ending 6/5/20 nor her stated attorney's fees.

44. Plaintiff's lawyers continued (and still continue) to incur time reviewing correspondence from Defendants and speaking with their attorney in an attempt to resolve the matter of liquidated damages and payment of her attorney's fees.

WHEREFORE, Plaintiff demands judgment against Defendants WLG and WHITEHEAD, jointly and severally, for

a) Liquidated damages equal to the amount of minimum wages (at the Florida Minimum Wage Rate) that were due to her on 6/5/20;

b) Costs of suit and an award of reasonable attorney's fees pursuant to 29 U.S.C. §216(b); and

c) Declaratory, injunctive and such other relief as the Court deems just and proper.

## COUNT II - FLSA RETALIATION
(Both Defendants)

45. Plaintiff incorporates by reference and re-alleges paragraphs 1 through 31 and 33-36 as if fully set forth herein and further alleges:

46. As shown by the incorporated paragraphs above, Plaintiff repeatedly engaged in protected activity under the FLSA including through the assertion of rights to be

      timely paid her wages and objections to Defendants' efforts to withhold all of her earned wages and force her to continue working without payment of any wages, not even the minimum wage.

47. Within days of Plaintiff's protected activity, Defendants embarked on a campaign of threats and a plan of adverse action that was designed to intimidate Plaintiff and cause her to resign or establish cause to terminate her employment. When Plaintiff refused to resign, Defendants terminated her on 6/15/20 "retroactively."

48. As shown by Exhibit "A", Defendants have indicated their continued intent to retaliate against Plaintiff by filing lawsuits against her and taking other measures designed to disparage her reputation, hurt her economically, and cause her pain and suffering and emotional distress.

49. Defendants' past actions have damaged Plaintiff and its future actions will continue to damage Plaintiff.

      WHEREFORE, Plaintiff demands judgment against Defendants WLG and WHITEHEAD, jointly and severally, for

      a)     Compensatory damages,

      b)     Back Wages and benefits,

      c)     Future Pay,

      d)     Declaratory and Injunctive Relief,

      e)     Her attorney's fees and costs, and

      f)     Such other relief that is available under the FLSA as the Court deems just and proper

## COUNT III – RETALIATION UNDER THE FMWA
[Both Defendants]

50. Plaintiff incorporates by reference and re-alleges paragraphs 1 through 31 and 33-36 as if fully set forth herein and further alleges:

51. As shown by the incorporated paragraphs above, Plaintiff repeatedly engaged in protected activity under the FMWA including through the assertion of rights to be timely paid her wages and objections to Defendants' efforts to withhold all of her earned wages and force her to continue working without payment of any wages, not even the minimum wage.

52. Within days of Plaintiff's protected activity, Defendants embarked on a campaign of threats and a plan of adverse action that was designed to intimidate Plaintiff and cause her to resign or establish cause to terminate her employment. When Plaintiff refused to resign, Defendants terminated her on 6/15/20 "retroactively."

53. As shown by Exhibit "B", Defendants have indicated their continued intent to retaliate against Plaintiff by filing lawsuits against her and taking other measures designed to disparage her reputation, hurt her economically, and cause her pain and suffering and emotional distress.

54. Defendants' past actions have damaged Plaintiff and its future actions will continue to damage Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendants WLG and WHITEHEAD, jointly and severally, for

a) Compensatory damages,

    b)    Back Wages and benefits,

    c)    Future Pay,

    d)    Declaratory and Injunctive Relief,

    e)    Her attorney's fees and costs, and

    f)    Such other relief that is available under the FLSA as the Court deems just and proper

## COUNT IV – FLORIDA WHISTLEBLOWER'S ACT
[Both Defendants]

55. Plaintiff incorporates by reference and re-alleges paragraphs 1 through 31 and 33-36 as if fully set forth herein and further alleges:

56. As shown by the incorporated paragraphs above, Plaintiff repeatedly engaged in protected activity under the FLSA and FMWA including through the assertion of rights to be timely paid her wages and objections to Defendants' efforts to withhold all of her earned wages and force her to continue working without payment of any wages, not even the minimum wage.   All such acts were in violation of the FLSA and the FMWA.

57. Within days of Plaintiff's protected activity, Defendants embarked on a campaign of threats and a plan of adverse action that was designed to intimidate Plaintiff and cause her to resign or establish cause to terminate her employment.   When Plaintiff refused to resign, Defendants terminated her on 6/15/20 "retroactively."

58. As shown by Exhibit "B", Defendants have indicated their continued intent to retaliate against Plaintiff by filing lawsuits against her and taking other measures

designed to disparage her reputation, hurt her economically, and cause her pain and suffering and emotional distress.

59. Defendants' past actions have damaged Plaintiff and its future actions will continue to damage Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendants WLG and WHITEHEAD, jointly and severally, for

    a) Compensatory damages,

    b) Back Wages and benefits,

    c) Future Pay,

    d) Declaratory and Injunctive Relief,

    e) Her attorney's fees and costs, and

    f) Such other relief that is available under the FWA as the Court deems just and proper

## COUNT V – UNPAID BACK WAGES
[WLG]

60. Plaintiff incorporate by reference and re-alleges paragraphs 1-7, 9-10, 30, 32 and 34-36 as if fully set forth herein and further alleges:

61. During her employment with WLG, Plaintiff earned hourly wages and benefits that were considered wages including paid vacation leave.

62. In August, 2019, WLG increased Plaintiff's annual paid vacation leave to 14 days per year and one week of sick leave.

63. Plaintiff used some of the 14 days of paid vacation leave but had 7 or more days of paid vacation leave due to her at the time of her termination. The exact number

of days of vacation owed to Plaintiff will be determined through discovery. Each day of paid vacation leave was worth $ 224.77 per day (gross).

64. WLG maintained a policy that employees could request payout of unused vacation days.

65. WLG owes Plaintiff for each of her accrued but unused vacation days and she has been damaged by its failure to pay her same.

WHEREFORE, Plaintiff demands judgment against WLG for each day of paid vacation leave that she had accrued at the time of her termination at the rate of $224.77 per day plus an award of her attorney's fees and costs pursuant to §448.08, Fla. Stat.

## COUNT VI- INTERFERENCE WITH FFRCA RIGHTS
[Both Defendants]

66. Plaintiff incorporate by reference and re-alleges paragraphs 1-15, 18-20, 25, 28 and 30-36 as if fully set forth herein and further alleges:

67. The FFCRA includes the Emergency Paid Sick Leave Act and an amendment to the FMLA that is titled the "Emergency Family Medical Leave Expansion Act" ("EFMLEA").

68. Plaintiff had worked for Defendants for almost seven years in advance of 4/1/20 and therefore was a covered by FFCRA and was eligible for its benefits.

69. Defendant WLG was a covered employer under the FFCRA in that it employed less than 500 employees during the period required by the FFCRA.

70. Under the FFCRA a covered employer is obligated to notify an eligible employee of the employee's entitlement to paid sick leave and Emergency Family Medical Leave upon becoming aware of circumstances that qualify the employee for such leave.

71. Defendants became aware on 4/30/20 that Plaintiff was unable to report to work at WLG's offices because she was home caring for her young son whose school was closed due to COVID 19.  These circumstances expressly entitled Plaintiff, 80 hours of paid sick leave of up to $511 per day and paid Emergency Family Medical Leave of up to $200 per day for an additional period of up to 10 weeks in the event she was unable to work or telework.

72. Defendants had sufficient work for Plaintiff to perform (and indeed told her that they wanted her to continue to work for them) but refused to allow her to continue teleworking as she had done for the past three months.

73. Had Defendants fulfilled their legal obligation to notify Plaintiff of her entitlement to paid sick leave and Emergency Family Medical leave, Plaintiff would have taken the leave to continue receiving pay and to preserve her job.

74. Defendants' failure or refusal to inform Plaintiff of her rights was an unlawful interference with her rights under the FFCRA that caused Plaintiff to suffer economic harm and other prejudice, including but not limited to loss of her benefits and right to reinstatement at the conclusion of the leave.

75. Instead, Defendants used Plaintiff's inability to report to their office as a pretext to terminate her employment and evade its obligation to pay leave under FFFCRA.

WHEREFORE, Plaintiff demands judgment against WLG and WHITEHEAD, for damages and equitable relief in the form of:

a) Back wages and benefits,

b) Future pay and benefits,

c) Reinstatement,

      d)      Declaratory and Equitable Relief,

      e)      Her attorney's fees and costs of suit; and

      f*)*      Such other relief as the Court deems just and proper.

## COUNT VII -- RETALIATION UNDER THE FFCRA
[Both Defendants]

76. Plaintiff incorporate by reference and re-alleges paragraphs 1-15, 18-20, 25, 28 and 30-36 as if fully set forth herein and further alleges:

77. As shown by the incorporated paragraphs above, Plaintiff repeatedly engaged in protected activity under the FFCRA including through objections to Defendants' demand that she report to their office to work when she had no one to care for her young son due to closure of his school and/or day-care due to COVID 19.

78. Within days of Plaintiff's protected activity, Defendants embarked on a campaign of threats and a plan of adverse action that was designed to intimidate Plaintiff and cause her to resign or establish cause to terminate her employment. When Plaintiff refused to resign, Defendants terminated her on 6/15/20 "retroactively."

79. As shown by Exhibit "B", Defendants have indicated their continued intent to retaliate against Plaintiff by filing lawsuits against her and taking other measures designed to disparage her reputation, hurt her economically, and cause her pain and suffering and emotional distress.

80. Defendants' past actions have damaged Plaintiff and its future actions will continue to damage Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendants WLG and WHITEHEAD, jointly and severally, for

a)	Back Wages and benefits,

b)	Future Pay,

c)	Declaratory and Injunctive Relief,

d)	Her attorney's fees and costs, and

e)	Such other relief that is available under the FLSA as the Court deems just and proper

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury for each claim so triable.

Dated,  June 29, 2020.

>	LANGBEIN & LANGBEIN, P.A.
>	Attorneys for the Plaintiff
>	7480 Fairway Drive, Suite 209
>	Miami Lakes, FL 33014
>	Tel: (305) 556-3663
>	Fax: (305) 556-3647
>	Email:  langbeinpa@bellsouth.net
>
>	By:   /s/ *Leslie W. Langbein*
>	         Leslie W. Langbein, Esq.
>	         Fla. Bar No. 305391